UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SOPHIA MITCHELL, individually and on behalf of minor child C.D., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:15-CV-1846-CEJ |
| ELI LILLY AND CO., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant GlaxoSmithKline LLC's motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), or, alternatively, to transfer venue, pursuant to 28 U.S.C. § 1404(a).   Plaintiffs responded, agreeing with the request to transfer venue and suggesting transfer to the Northern District of Florida.   GlaxoSmithKline did not reply.   The other defendants, Abbott Laboratories, Inc. and Eli Lilly and Co., did not respond to the motion.

## Background

Plaintiffs initiated this products liability action in the Circuit Court for the City of St. Louis, Missouri on February 23, 2015.   Defendant GlaxoSmithKline LLC[1] effected pre-service removal on December 11, 2015, invoking jurisdiction based on diversity, 28 U.S.C. § 1332(a).

According to the complaint, GlaxoSmithKline researched, developed, tested,

---

[1]GlaxoSmithKline LLC and SmithKline Beecham Corporation d/b/a GlaxoSmithKline were identified as separate defendants in the complaint.   GlaxoSmithKline LLC was formerly known as SmithKline Beecham Corporation; they are the same entity.   The sole member of GlaxoSmithKline LLC is GlaxoSmithKline Holdings (Americas) Inc., a Delaware corporation with its principal place of business in Delaware.

and manufactured the drug bupropion, and then marketed and distributed it in Missouri, Florida, and throughout the United States.  Similarly, defendant Abbott Laboratories, Inc. similarly created, marketed, and distributed valproic acid sodium; defendant Eli Lilly and Co. created, marketed, and distributed fluoxetine.

Plaintiff Sophia Mitchell was prescribed bupropion, fluoxetine, and valproic acid sodium which she took during the first trimester of pregnancy.  Her child, plaintiff C.D., was born with congenital birth defects on February 23, 2011.  Mitchell was prescribed the medications and ingested them in Tallahassee, Florida, where she and C.D. "currently reside."  C.D. was born in Gainesville, Florida.

Tallahassee and Gainesville are both located in the Northern District of Florida.  It is undisputed that the claims asserted in the complaint have no connection to Missouri.  GlaxoSmithKline raised two arguments in support of its motion to dismiss for lack of personal jurisdiction:  First, GlaxoSmithKline's sole member[2] is incorporated in Delaware and also maintains its principal place of business there, such that there is no general jurisdiction over the company in Missouri.  Second, GlaxoSmithKline's suit-related contacts are insufficient for Missouri to exercise specific jurisdiction over the company on the claims pled. Plaintiffs concede the facts supporting GlaxoSmithKline's conclusions.  However, plaintiffs argue, by registering to do business in Missouri and designating an in-state agent for service of process, GlaxoSmithKline has consented to personal jurisdiction in Missouri for any claim brought by any plaintiff, whether or not related to acts performed by the company in Missouri.

The plaintiffs and GlaxoSmithKline  agree that in the interests of justice this

---

[2] *See OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (holding that an LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members).

case should be transferred to the Northern District of Florida, where specific jurisdiction would exist over all the defendants and where a substantial part of the events giving rise to plaintiffs' claims occurred.

### Discussion

### A. Basis for Transfer

Although the parties agree that transferring this case to the Northern District of Florida is appropriate, the Court must independently determine whether and on what basis to transfer the case. *See Steen v. Murray*, 770 F.3d 698, 701 (8th Cir. 2014). The parties suggest transfer pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." "A case may be transferred under § 1404(a) only when venue is proper in the transferor *and* transferee forums." *Steen*, 770 F.3d at 701. Among other considerations, venue is only proper where personal jurisdiction exists over all the defendants. *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588 (8th Cir. 2007). "[C]ourts use § 1404(a) as a mere 'housekeeping measure' and transfer cases under that statute solely to promote litigation convenience and efficiency." *Id.* at 589 n.4.

In contrast, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1406(a) permits a court to transfer a case to another district if "venue is not proper" in the transferor court, *Wisland v. Admiral*

*Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997), including "for lack of personal jurisdiction" over a defendant there.  *Eggleton*, 495 F.3d at 584 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).  Though the decision to transfer rather than dismiss for lack of personal jurisdiction is discretionary, § 1406(a) "should be construed wherever possible to remove procedural obstacles which would prevent the expeditious and orderly adjudication of a case on its merits."  *Enter. Rent-A-Car Co. v. Stowell*, 137 F. Supp. 2d 1151, 1159 (E.D. Mo. 2001) (citing *Goldlawr*, 369 U.S. at 467); *see also Thompson v. Ecological Sci. Corp.*, 421 F.2d 467, 470 (8th Cir. 1970) ("Even if personal jurisdiction had not been obtainable in Arkansas, a transfer under 28 U.S.C. § 1406 might have been a preferable alternative to dismissal." (citation omitted)).

The framework to determine whether to permit transfer is the same under both statutes, but the type of transfer affects which law applies in the transferee court, and may be outcome determinative.  *See Steen*, 770 F.3d at 702.  "When a case is transferred under § 1404(a), the transferee district court applies the choice-of-law rules of the transferor court's State.  But when a diversity case is transferred under § 1406(a) . . . [the transferee court] appli[es] . . . the law of the transferee court, beginning with its choice-of-law rules."  *Id*.  In *Steen*, for example, the Eighth Circuit affirmed where an Iowa court transferred a case to Nebraska, pursuant to § 1406(a), and the Nebraska court then correctly applied Nebraska's choice-of-law rules to find plaintiff's claims were governed by Nebraska's statute of limitations, and were thus time-barred.  *Id.* at 704–06.  Had the transfer been effectuated pursuant to § 1404(a), the Nebraska court would have been required to apply Iowa's choice-of-law rules, which may have pointed to Iowa's statute of

limitations, under which the claims would not have been time-barred.  *Id.*

If the Court has personal jurisdiction over GlaxoSmithKline, then the Court may transfer the case, pursuant to § 1404(a), and the Northern District of Florida would apply Missouri's choice-of-law rules.  If the Court lacks personal jurisdiction over GlaxoSmithKline, then instead of dismissing the company, the Court may transfer the case, pursuant to § 1406(a).  In that situation the Northern District of Florida would apply Florida's choice-of-law rules.  Further, as in *Steen*, it has been suggested that the distinctions between Florida and Missouri's laws might implicate statute of limitations or other considerations post-transfer.  Consequently, in order to apply the correct statute the Court must determine whether personal jurisdiction exists over GlaxoSmithKline in Missouri, and then decide whether to transfer.

### Personal jurisdiction

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).  "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant."  *Id.* (citations omitted).  "A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Id.* (quotation marks and citation omitted).  "Where no hearing is held on the motion, [a court] must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction."  *Id.* (citation omitted).

If a defendant has not consented to a State's exercise of jurisdiction, "personal jurisdiction can be specific or general." *Id.* (quotation marks and citation omitted).

### (a) <u>General Jurisdiction</u>

"The Due Process Clause permits the exercise of 'general jurisdiction' to hear 'any and all claims against' a defendant if its 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. In *Daimler*, the Supreme Court recapitulated the "canonical" principle that a "corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 757 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). To "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business," the Supreme Court explained, "is unacceptably grasping." *Id.* at 761 (quotation marks and citation omitted).

Rather, "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760 (quotation marks, citation, and alteration omitted). "These bases," *Daimler* held, "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* Only in an "exceptional case" will "a corporation's operations in a forum other than its formal

place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 773 n.19 (citation omitted).

GlaxoSmithKline is incorporated and maintains its principal place of business in Delaware; it is not at home in Missouri.  Nor have plaintiffs argued any exceptional circumstances apply.  Therefore, general jurisdiction does not exist over GlaxoSmithKline in Missouri.

### (b)  Specific jurisdiction

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." *Fastpath*, 760 F.3d at 820 (quotation marks and citations omitted).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 134 S. Ct. at 753; *see* Fed. R. Civ. P. 4(k)(1)(A).  "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Fastpath*, 760 F.3d at 820 (quotation marks and citations omitted).

Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1, "extends jurisdiction to the limits of the Due Process Clause, [but] it does so only for acts within its enumerated categories." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. 2010) (en banc), and *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).  The statute provides that a defendant submits "to the jurisdiction of the courts of th[e] state as to any cause of action arising from," among other things, transacting any business,

making any contract, or committing any tortious act "within th[e] state."  Mo. Rev. Stat. § 506.500.1.  "Only causes of action arising from acts enumerated in [the statute] may be asserted against a defendant in an action in which jurisdiction over him is based upon" the long-arm statute.  *Id.* § 506.500.3.  It is undisputed that none of the causes of action pled in the complaint arise from GlaxoSmithKline's having transacted business, made a contract, or committed a tort in Missouri. Therefore, Missouri's long-arm statute does not permit Missouri's courts to exercise personal jurisdiction over GlaxoSmithKline in this action.

Even if Missouri's long-arm statute were satisfied, moreover, "[d]ue process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice."  *Fastpath*, 760 F.3d at 820 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980), and *Int'l Shoe Co.*, 326 U.S. at 316).  "Minimum contacts is based on the notion that 'those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.'"  *Id.* (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011)).  "A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there."  *Id.* at 820–21 (citations omitted).  "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* at 821 (quoting *Nicastro*, 131 S. Ct. at 2787).

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated

contacts or of the unilateral activity of another party or a third person."  *Id.*  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State."  *Id.* at 1122 (quotation marks and citation omitted).  "Contacts between the plaintiff and the forum State do not satisfy this inquiry."  *Fastpath*, 760 F.3d at 821 (citation omitted).  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Id.* (quotation marks and citations omitted).

The Eighth Circuit has "established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state."  *Id.* (citation omitted).  "The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties."  *Id.* (citations omitted).  The first three factors are given "significant weight."  *Id.* (citation omitted).

Here, however, a detailed analysis of GlaxoSmithKline's contacts with Missouri is not required.  Plaintiffs do not allege any facts regarding the quality of the company's contacts with Missouri, the quantity of those contacts, or the relationship between the causes of action and those contacts.  They concede that their causes of action do not stem from GlaxoSmithKline's conduct in Missouri, and that the company's suit-related conduct occurred in Delaware and Florida. Therefore, the Court lacks specific jurisdiction over GlaxoSmithKline in this action.

### **(c)  Consent to Jurisdiction**

Plaintiffs posit that GlaxoSmithKline consented to the Missouri courts' exercise of personal jurisdiction over the company on any cause of action, whether or not related to the company's activities in Missouri.  According to plaintiffs, GlaxoSmithKline manifested that consent when it registered to do business in Missouri and then appointed an in-state agent for service of process. GlaxoSmithKline does not contest that it registered to do business and also maintains an agent for service of process in Missouri.  Rather, it argues, *Daimler* alters the test for consent to jurisdiction, mandating a Due Process analysis independent of the question of a defendant's consent.

In *Knowlton v. Allied Van Lines, Inc.*, the Eighth Circuit held that a corporation may consent to all exercise of personal jurisdiction by a state's courts by registering to do business and designating an agent for service of process there. 900 F.2d 1196 (8th Cir. 1990).  In *Knowlton*, a Colorado plaintiff's car was struck by a moving van operated by an Iowa corporation acting as agent for the defendant, a corporation based in Illinois and incorporated in Delaware.  *Id.* at 1197.  The defendant corporation was registered to do business in Minnesota and had designated an in-state agent for service of process, and the plaintiff chose to file suit there.  *Id.* at 1197–98.

The defendant was not subject to specific jurisdiction in Minnesota because the suit did not arise out of or relate to its business in that State.  *See id.* at 1198–99.  The Eighth Circuit, referencing the Supreme Court's then-existing test for general jurisdiction, found that it did not need to determine whether the defendant's business in Minnesota was "substantial" and "continuous" enough to

warrant the exercise of general jurisdiction. *Id.* at 1199. Of course, under the more restrictive view of general jurisdiction that *Daimler* endorses, no general jurisdiction would have existed over the corporation because it was neither incorporated in nor principally based in Minnesota. *See Daimler*, 134 S. Ct. at 773 n.19. Whether the corporation was subject to general jurisdiction was irrelevant, the Eighth Circuit held, because the Minnesota courts had "jurisdiction based on consent" over the defendant corporation. *Knowlton*, 900 F.2d at 1199.

The Eighth Circuit succinctly explained why a defendant's consent to personal jurisdiction in a particular forum obviates the need to conduct a Due Process analysis:

> Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.

*Id.* (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)). Though "[a]ppointment of a registered agent for service is not one of the specific types of consent listed by the Supreme Court," *Knowlton* acknowledged, "it is nevertheless a traditionally recognized and well-accepted species of general consent, possibly omitted from the Supreme Court's list because it is of such long standing as to be taken for granted." *Id.* at 1200. The *Knowlton* Court further explained: "The whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." *Id.* at 1999.

*Knowlton* additionally held that, "[t]he effect of such a designation can be limited to claims arising out of in-state activities, and some statutes are so limited, but the Minnesota law contains no such limitation." *Id.*   The Eighth Circuit emphasized that Minnesota provides that a foreign corporation will be subject to "service of process" on its "registered agent" without "words of limitation to indicate that this type of service is limited to claims arising out of activities within the state." *Id.*

The Court of Appeals also contrasted that statute with another statute that provides for service upon the secretary of state whenever a corporation withdraws from Minnesota.  *Id.*  Service upon the secretary is effective as to a withdrawn corporation only for liabilities "incurred within [Minnesota] or arising out of any business done in [Minnesota] by the corporation prior to the issuance of a certificate of withdrawal."   *Id.* (quotation marks and citation omitted).   The *Knowlton* Court highlighted the significance of limiting terms in one statute and the absence of such terms in the related statute:  "These words of limitation . . . clearly indicate that the Legislature knew how to limit the purposes of service of process when it wanted to do so, and that provisions for service without such an express limitation are intended to apply to any claims made against a corporation with a registered agent within the state." *Id.*

Finally, the Court of Appeals examined the Minnesota courts' interpretations of the statutes at issue, and the Court found that the state courts interpreted the registration statutes to "permit[] suit on transitory causes of action . . . regardless of where the cause of action arose . . . ." *Id.* at 1200 (citations omitted).  The *Knowlton* Court therefore "conclude[d] that appointment of an agent for service of

process under" Minnesota's corporate registration statute "gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state." *Id.* "Such consent," the Eighth Circuit held, "is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary." *Id.*

Just over a year after *Knowlton*, the Eighth Circuit emphatically recapitulated the "general rule" that "consent is a traditional basis for establishing personal jurisdiction," and the Eighth Circuit cited *Knowlton* for the proposition that, "the presence of an agent designated pursuant to a state statute [is] sufficient to indicate consent to be sued in that jurisdiction." *Ocepek v. Corp. Transp., Inc.*, 950 F.2d 556, 557 (8th Cir. 1991). Later, the Court of Appeals again applied *Knowlton*'s holding in a case where a corporation was principally based in Pennsylvania and incorporated in Indiana, and where the plaintiff, by then a citizen of South Dakota, brought claims all arising out of Utah, his prior domicile. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1391 (8th Cir. 1993). In *Sondergard*, the Eighth Circuit, citing *Knowlton*, analyzed South Dakota's corporate registration statutes and the cases interpreting them to hold that, "service upon a company's registered agent is sufficient to confer jurisdiction" in South Dakota. *Id.* at 1392–93.

In the intervening decades the Eighth Circuit has never overturned or limited *Knowlton*'s holding that consent by registration is a sufficient condition for the exercise of personal jurisdiction, which does not require a due process analysis. *Knowlton*, 900 F.2d at 1199–1200; *see Steen*, 770 F.3d at 702 (citing *Knowlton* just two years ago for its analysis of § 1404(a) transfer determinations). Nor has the Eighth Circuit altered *Knowlton*'s analytical framework, which requires

13

measuring the scope of a defendant's consent to jurisdiction by registering to do business in a state using the traditional canons of statutory analysis—examination of the relevant statutory text and the state courts' cases interpreting it. *Knowlton*, 900 F.2d at 1199–1200.

Further, contrary to GlaxoSmithKline's position, the Supreme Court's recent decisions do not sub silentio reverse *Knowlton*. In *Daimler*, the Supreme Court explained the limits of general jurisdiction where a "foreign corporation . . . has not consented to suit in the forum." 134 S. Ct. at 756 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011)). That is the sole reference in *Daimler* to consent, and the defendant in *Daimler* had not consented to suit in California, which is why it was necessary to determine whether California's courts could force the company to defend itself there, in the absence of consent. *Id.* Moreover, *Daimler* did not cite *Insurance Corp. of Ireland*, 456 U.S. 694, or any of the Supreme Court's earlier cases establishing consent as a basis for jurisdiction.

The same is true of *Goodyear*, from which *Daimler* drew its analytical framework. 131 S. Ct. 2846. *Goodyear* mentions consent only once, in language *Daimler* quoted, and the defendant corporations in *Goodyear* had not consented to suit in North Carolina, which is why it was necessary to determine whether that states' courts could require the defendants to litigate there. *Id.* at 2856. *Walden*, a recent decision about the limits of specific jurisdiction, also does not mention consent. *See* 134 S. Ct. 1115. Instead *Walden* speaks of "a State's authority to bind a nonresident defendant to a judgment of its courts," in a situation where a Georgian police officer had not consented to suit in Nevada and had "no other

contacts with Nevada" beyond those created by the plaintiff, and thus Nevada lacked specific jurisdiction over the officer.  *Id.* at 1119, 1121, 1124–26.

Thus, *Daimler*, *Goodyear*, and *Walden* may only serve to underscore *Knowlton*'s holding that consent is an independent basis for jurisdiction, which requires no foray into Due Process.  To the extent those cases might undermine *Knowlton*'s holding, moreover, it is apparent they do not state so explicitly, and the Court is thus obliged to apply *Knowlton*.  *See McDonough v. Anoka Cnty.*, 799 F.3d 931, 941 (8th Cir. 2015).  Thus, it remains the law that a corporation's registration to do business and designation of an agent for service of process in a state may, depending on the scope of the statutory consent, serve as ex-ante consent to personal jurisdiction in that state for any cause of action later brought against the corporation.  *Knowlton*, 900 F.2d at 1199–1200.

In the instant case, therefore, the Court must determine the scope of GlaxoSmithKline's consent to personal jurisdiction in Missouri on the basis of its having registered to do business and designated an agent for service of process here.  To answer that question, as *Knowlton* instructs, the Court examines the text of the relevant statutes and the Missouri courts' cases interpreting it.  Several interrelated corporate registration statutes bear on that analysis; they are remarkably similar to the Minnesota statutes the Eighth Circuit determined sufficed for all-purpose consent in *Knowlton*.

Missouri's corporate registration statute provides:  "A foreign corporation may not transact business in this state until it obtains a certificate of authority from the secretary of state."  Mo. Rev. Stat. § 351.572.1.  A corporation's certificate of authority to operate in Missouri places it on equal footing with corporations

incorporated here:  "A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and . . . is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character."  Mo. Rev. Stat. § 351.582.2.

One requirement Missouri imposes on registered corporations is that, "[e]ach foreign corporation authorized to transact business in this state shall continuously maintain in this state . . . [a] registered agent . . . ."  Mo. Rev. Stat. § 351.586. Missouri permits service of process "[u]pon a domestic or foreign corporation . . . when by law it may be sued . . . by delivering a copy of the summons and of the petition to . . . [a] general agent, or . . . any other agent authorized by appointment or required by law to receive service of process . . . ."  Mo. Rev. Stat. § 506.150.1(3); Mo. Sup. Ct. R. 54.13(b)(3) (same).  In turn, when a corporation avails itself of the privilege of registering to do business in Missouri and, commensurate with that privilege, maintains a registered agent in Missouri, it does so knowing that:  "The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation."  Mo. Rev. Stat. § 351.594.1.  By its plain text, the statute does not limit service of process to those suits arising from or related to a registered corporation's activities in Missouri.

In contrast, "[t]he secretary of state's revocation of a foreign corporation's certificate of authority appoints the secretary of state the foreign corporation's agent for service of process," but only for "any proceeding based on a cause of action which arose during the time the foreign corporation was authorized to

transact business in" Missouri.  Mo. Rev. Stat. § 351.602.4.  If a corporation seeks to "obtain[] a certificate of withdrawal from the secretary of state," it must similarly submit an application in which it, among other things, "revokes the authority of its registered agent to accept service on its behalf and appoints the secretary of state as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in" Missouri.  Mo. Rev. Stat. § 351.596.2(3).

The text of these Missouri statutes is substantially similar to the Minnesota statutes analyzed in *Knowlton*.  Though "[t]he effect of such a designation can be limited to claims arising out of in-state activities," as with the statutes at issue in *Knowlton*, the Missouri statutes at issue here "contain no such limitation."  900 F.2d at 1999.  Like its Minnesota counterpart, the Missouri statutes applicable where, as here, GlaxoSmithKline has at all relevant times been registered to do business in Missouri contain no "words of limitation to indicate that this type of service is limited to claims arising out of activities within the state."  *Knowlton*, 900 F.2d at 1999.  The textual distinctions between the statutes applicable to a registered corporation and those applicable to withdrawn or unauthorized corporations also "clearly indicate[s] that the [Missouri] Legislature knew how to limit the purposes of service of process when it wanted to do so," such that "provisions for service without such an express limitation are intended to apply to any claims made against a corporation with a registered agent within the state."  *Id.*  As in *Knowlton*, therefore, Missouri's registration statutes confirm that by registering to do business in Missouri and maintaining an agent for service of process here, GlaxoSmithKline

has "consent[ed] to the jurisdiction of [Missouri's] courts for any cause of action, whether or not arising out of activities within the state." *Id.* at 1200.

Finally, the Supreme Court of Missouri has recognized that a corporation's registration and appointment of an in-state agent may form an independent basis for personal jurisdiction based on consent. *See State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165 (Mo. 1999) (en banc) (holding that a Michigan corporation had consented to personal jurisdiction in Missouri by registering to do business and designating an agent for service of process, where the plaintiff's claims arose in Colorado and consent by registration was the only applicable basis for personal jurisdiction). As the *Hollinger* Court explained: "Where a corporation's registered agent is served in Missouri, assertion of jurisdiction [is] no more than adherence to the traditional understanding that a state may condition a corporation's doing business upon the appointment of an agent in the state for service of process." *Id.* at 167. Recent authority from the Missouri Court of Appeals is consistent with *Hollinger*'s holding. In 2012, the Missouri Court of Appeals held that, "Missouri authorize[s] [a corporation] to do business here *subject to the condition* that it designate an agent . . . to accept service of process . . . . Due process requires no more." *Sieg v. Int'l Envtl. Mgmt., Inc.*, 375 S.W.3d 145, 157 (Mo. Ct. App. 2012). Therefore, as in *Knowlton*, Missouri's interpretation of its own law supports the exercise of personal jurisdiction over a corporation that has consented by registering to do business in the state and designating an agent for service of process. Consequently, the Court has personal jurisdiction over GlaxoSmithKline, and the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will be denied.

### B.  Section 1404(a) Transfer

Having determined that GlaxoSmithKline consented to personal jurisdiction in Missouri, the Court must next consider whether to transfer the case to the Northern District of Florida.  Venue is proper in this Court by virtue of the case having been removed from state court, *see* 28 U.S.C. § 1441(a), (f), and the only potential impediment to proper venue—personal jurisdiction over GlaxoSmithKline—has been resolved.  *See Eggleton*, 495 F.3d at 588 (explaining that venue is only proper where personal jurisdiction exists over all the defendants).  Section 1406(a) is inapplicable.

Section 1404(a) applies where, as here, venue is proper in the transferor court.  As explained, that statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  "[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (quotation marks and citations omitted).  Here, however, the typical deference afforded to a plaintiff's choice to file a case in this district is of no moment because plaintiffs are not opposing transfer, and so GlaxoSmithKline's burden is lessened.  *See id.*

"[A] district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations.  Ordinarily, the district court [will] weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of

parties and witnesses and otherwise promote the interest of justice." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) [hereinafter *Atlantic Marine*] (citation omitted).   In *Atlantic Marine*, the Supreme Court described the private and public interest factors a court should consider when deciding a § 1404(a) motion to transfer venue where, as here, no valid forum selection clause is at issue:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.   Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.   The Court must also give some weight to the plaintiffs' choice of forum.

*Id.* at 581 n.6 (quotation marks and citations omitted).

Here, personal jurisdiction is no impediment to venue in the Northern District of Florida, *see Eggleton*, 495 F.3d at 588, because the undisputed facts demonstrate specific jurisdiction exists in Florida over all the defendants.   *See Walden*, 134 S. Ct. at 1121; *Fastpath*, 760 F.3d at 820.   The defendants deliberately marketed and distributed the medications at issue in Florida.   Plaintiffs at all relevant times lived in Florida; Mitchell was prescribed the medications at issue there, she ingested them there, and C.D. was born with congenital birth defects there.   Therefore, the causes of action are Florida-based, and defendants have significant contacts with Florida arising out of or related to the suit, such that they should reasonably be expected to litigate the suit in Florida.

Venue would also be proper in the Northern District of Florida because, as

just explained, "a substantial part of the events or omissions giving rise to the claim occurred" in that District.   28 U.S.C. § 1391(b)(2).   Further, as plaintiffs and GlaxoSmithKline have urged, *Atlantic Marine*'s public and private interest considerations all point to the Northern District of Florida.   Plaintiffs and significant witnesses (*e.g.*, Mitchell's physician) reside in that district.   *Walden,* 134 S. Ct. at 581 n.6.   There is also no connection between this action and the Eastern District of Missouri that would justify retaining the case.   Therefore, the Court finds it is appropriate to transfer this case to the Northern District of Florida.

**✱✱✱**

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the motion of defendant GlaxoSmithKline LLC to dismiss for lack of personal jurisdiction [Doc. #9] is **denied**.   The defendant's alternative request for transfer is **granted**.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1404(a), the Clerk of Court shall transfer this case to the United States District Court for the Northern District of Florida.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 29th day of January, 2016.